*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *JOHN SPECKIN,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-149-P-S* |
| | ) | |
| *NESTLÉ WATERS NORTH AMERICA* | ) | |
| *INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The defendant, Nestlé Waters North America Inc., moves for summary judgment in this action alleging violation of the Maine Whistleblowers' Protection Act, slander, and defamation, removed by the defendant to this court. I recommend that the court grant the motion in part.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record

2

citation.  *See id.*  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The following undisputed material facts are appropriately presented in the parties' respective statements of material facts, unless otherwise noted.

The defendant bottles, sells, and distributes spring water in the United States and Canada. Nestlé Waters North America Inc.'s Statement of Material Facts ("Defendant's SMF") (Docket No. 12) ¶ 1; Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's

3

Responsive SMF") (Docket No. 21) ¶ 1.  The defendant's Home & Office Division employs route sales representatives ("RSRs") to sell and deliver bottled water and related products to commercial and residential customers.  *Id*. ¶ 2.   The defendant hired the plaintiff as a forklift operator in its Somerset, New Jersey, location on October 19, 1987.  *Id*. ¶ 3.  The plaintiff became an RSR at that location in 1989.  *Id*. ¶ 4.

In the late 1990s, the plaintiff notified his supervisors that he was interested in relocating to Maine.  *Id*. ¶ 5.  In August 2000, the plaintiff transferred to the defendant's newly-acquired Gray, Maine, facility.  *Id*. ¶ 6.  He received a copy of the defendant's employee handbook when he transferred to this facility.  *Id*. ¶ 8.  He remained employed at this facility until his termination on May 3, 2007.  *Id*. ¶ 7.

The employee handbook set out the defendant's  Corrective Action and Progressive Discipline Policy, which was "recommended for certain violations of Company rules and standards, failure to meet performance expectations, [and] poor work habits."  *Id*. ¶¶ 10-11.  The handbook stated that while verbal counseling, written counseling, written warning, and suspension "are typically followed to provide the employee with reasonable notification of Company expectations, where the employee's overall performance is below standards, in cases of serious misconduct, or in any other circumstances deemed appropriate by the Company, one or more of these steps may be skipped at the Company's option."  *Id*. ¶ 12.  The handbook further stated that "Gross Insubordination: derogatory behavior toward management personnel or a customer, sexual or other harassment toward a Company employee or customer/supplier, or refusal of a job assignment" was a form of conduct that might warrant termination on the first occurrence.  *Id*. ¶ 13.

On October 11, 2000, the plaintiff signed a document acknowledging that he had received the employee handbook and that it was his "responsibility to read its contents and abide by the policies, work rules, and procedures" set forth therein. *Id.* ¶ 14. George Buie was the unit leader and the plaintiff's direct supervisor for the first five years of the plaintiff's employment at the Gray, Maine, facility. *Id.* ¶ 15. Buie retired in late 2005, and the plaintiff hired Marc Berube as the unit leader in April 2006. *Id.* ¶¶ 15-16. Berube became the plaintiff's direct supervisor at that time. *Id.* ¶ 17. The plaintiff preferred Buie's management style to that of Berube. *Id.* ¶ 21.[1] Brian Langley is Berube's supervisor. *Id.* ¶¶ 23, 29.

Shortly before the plaintiff transferred to the Gray, Maine, facility, RSRs became responsible for selling Starbucks coffee, cups, and small packages of bottled water to their customers. *Id.* ¶ 24. In order to track the RSRs' sales performance for these items, the defendant introduced a quantitative measurement system to the Gray, Maine, facility in 2005. *Id.* ¶ 25. Under this system, RSRs were given a scorecard that showed their assigned monthly sales goals for each item and their performance achieving those goals. *Id.* ¶ 26. The plaintiff received a "needs improvement" rating in the sales category of his performance evaluations for 2004, 2005, and 2006. *Id.* ¶ 28.

Langley gave the plaintiff his 2005 performance review because it occurred during the gap in time between Buie's retirement and Berube's arrival. *Id.* ¶ 29. Langley suggested that the plaintiff try knocking on more doors and talking to customers about all that Nestlé Waters had to offer. *Id.* ¶ 32. The plaintiff's sales did not improve after the 2005 review session. *Id.* ¶ 33. Berube issued the plaintiff a written counseling on or about November 3, 2006. *Id.* ¶ 34. As part of the counseling, Berube instructed the plaintiff to improve his efforts to meet his sales goals.

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 21, but the denial is not supported by the record citation given, and the citation given by the defendant supports the statement as I have worded it. The paragraph is accordingly deemed admitted.

*Id.* ¶ 35.  He suggested that the plaintiff attempt to prequalify customers for small pack sales and to assume the sale in some instances.  *Id.* ¶ 36.   By "pre-qualify," Berube meant that an RSR should look for homes with outward indicators of need and willingness to purchase small packs when choosing doors on which to knock.  *Id.* ¶ 38.[2]   By "assume the sale," Berube meant that an RSR should replenish product based on the customer's purchasing history.  *Id.* ¶ 39.[3]

The plaintiff understood the reference in the November counseling to "prequalify" to mean "if no one is home, and if it meets the criteria, to assume that they want it.  Assume that they'll want it and leave the product."  *Id.* ¶ 43.  The plaintiff claims to have had reservations about assuming the sale and prequalifying as he understood the terms.  *Id.* ¶ 44.  He never asked for clarification from Berube regarding what was being asked of him in the November counseling.  *Id.* ¶ 45.  He claims that he mentioned to Berube that he was "uncomfortable" assuming the sale.  *Id.* ¶ 47.

In August 2006, Berube met with all of the RSRs to emphasize "the seriousness of dumping product . . . leaving water to customers that hadn't ordered it."  *Id.* ¶ 50.  The defendant posted an e-mail cautioning RSRs not to dump product.  *Id.* ¶ 53.  Whenever a customer called the defendant and stated that he or she was billed for product that he or she did not order, the defendant allowed the customer to keep the product and deleted the price of the product from the customer's bill.  *Id.* ¶ 54.  The plaintiff knew of customers whose bills were adjusted in this manner.  *Id.* ¶ 55.

---

[2] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 38, but the denial does not address the substance of the paragraph, which presents what Berube was "suggesting."  The substance of the paragraph is supported by the citation to the record given by the defendant, and it is accordingly deemed admitted.

[3] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 39, but the denial does not address the substance of the paragraph, which presents what Berube meant.  The substance of the paragraph is supported by the citation to the record given by the defendant, and it is accordingly deemed admitted.

On November 6, 2006, Berube issued a written counseling to the plaintiff for inadequate sale of, *inter alia*, small packs.  Additional Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 17) ¶ 24;  Defendant's Reply to Plaintiff's Separate Statement of Material Facts ("Defendant's Responsive SMF") (included in Nestlé Waters North America Inc.'s Reply Statement of Material Facts ("Defendant's Reply Statement") (Docket No. 25), beginning at 43) ¶ 24.   In the written counseling, Berube instructed the plaintiff to pre-qualify customers for small packs using the criteria of having a nice home, children, toys in the yard, sporting goods in the garage, or a camper, boat, or ATV in the driveway.  *Id*. ¶ 25.  Berube also instructed the plaintiff to "assume the sale" by leaving product if he had not been able to contact the customer.  *Id*. ¶ 26.  The plaintiff wrote that he was not in agreement with the November 2006 write-up because he was not comfortable with assuming the sale.  *Id*. ¶ 29.

The plaintiff showed a slight improvement in performance after the November meeting, but his sales levels were still not meeting goals.  Defendant's SMF ¶ 56; Plaintiff's Responsive SMF ¶ 56.   On December 8, 2006, Berube spoke with the plaintiff again about his sales performance and issued a written warning.  *Id*. ¶ 57.  The warning explained that the plaintiff was being given two months to improve his sales.  *Id*. ¶ 58.  The plaintiff was warned that failure to improve his sales could result in termination.  *Id*. ¶ 59.  As part of the December warning, Berube suggested that the plaintiff increase his efforts and knock on more doors and seek out more decision-makers.  *Id*. ¶ 61.

Also in December 2006, the plaintiff received from the Maine Attorney General's Office in response to his inquiry a pamphlet that described the practice of leaving unordered product and then charging the customer to be against state and federal law.  Plaintiff's SMF ¶ 34; Defendant's Responsive SMF ¶ 34.  On January 8, 2007, the plaintiff told Berube that he had

read material provided to him by the Attorney General's Office that led him to conclude that assuming the sale and pre-qualifying customers were unlawful. *Id.* ¶ 36.[4]

The plaintiff did not show the requisite improvement in his sales by January 2007. Defendant's SMF ¶ 64; Plaintiff's Responsive SMF ¶ 64. On January 30, 2007, Berube accompanied the plaintiff on his route to assist the plaintiff in improving his performance. *Id.* ¶ 65.[5] The plaintiff asked Berube what the defendant intended to do since the plaintiff had not met his sales goals. *Id.* ¶ 66.[6] Berube indicated that the plaintiff's route might change as a result of an upcoming restructuring. *Id.* ¶ 67.[7] Berube believed that the restructuring would provide the plaintiff with an opportunity to improve his sales performance. *Id.* ¶ 77. The plaintiff asserts that he asked Berube, "[D]oesn't it bother you that you're delivering something to somebody that hasn't ordered it? I mean it's not right, it's illegal." *Id.* ¶ 75.

In early February 2007, the plaintiff met with Langley. *Id.* ¶ 79. The plaintiff claims to have told Langley during this meeting that he was doing everything asked of him except prequalifying and assuming the sale. *Id.* ¶ 81. He claims that he told Langley that he disagreed with prequalifying and assuming the sale, as he interpreted them. *Id.* ¶ 82. He also claims to have informed Langley that "it [was] against Maine – federal and Maine law to deliver something to someone who hadn't order it and then charge that customer for it." *Id.* ¶ 83. He

---

[4] The defendant purports to deny this paragraph of the plaintiff's statement of material facts, but the substance of its denial is not inconsistent with the limited factual statement set forth in the text. Defendant's Responsive SMF ¶ 36. The substance of the paragraph is supported by the citation to the record given by the plaintiff, and it is accordingly deemed admitted.

[5] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 65, but the denial is unresponsive to the factual assertions in that paragraph of the defendant's statement of material facts, which are supported by the citation to the record given by the defendant and accordingly are deemed admitted.

[6] The plaintiff purports to qualify this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 66, but the qualification does not address the substance of the factual assertions made in that paragraph.

[7] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 67, but the denial does not address the portion of the paragraph that I have included in the text. That portion is supported by the citation given by the defendant and accordingly is deemed admitted.

informed Langley that he had made anonymous calls to the Better Business Bureau and the Attorney General's Office.  *Id*. ¶¶ 84-85.  After this meeting, Langley later brought the issue of dumping up with his peers.  *Id*. ¶ 92.

Larry Gillis, Nestlé Waters' New England Zone Manager, issued a directive to the Gray, Maine, facility on February 27, 2007, reminding RSRs not to leave product without first speaking with the customer.  *Id*. ¶ 93.[8]  Before this, the plaintiff met with Gillis, who told him that it was not right for the company to deliver product to customers who had not ordered it.  Plaintiff's SMF ¶¶ 49-50; Defendant's Responsive SMF ¶¶ 49-50.  After receiving the directive by e-mail, Berube told the drivers that Gillis had said not to continue to pre-qualify customers without prior contact and not to leave product if there had been no contact with the customer.  *Id*. ¶¶ 50, 52.

In early March 2007, the plaintiff suffered an ankle injury that impeded his ability to perform the loading, lifting, pulling, and pushing associated with the RSR job.  Defendant's SMF ¶ 97; Plaintiff's Responsive SMF ¶ 97.  Berube assigned two RSRs, who alternated turns, to perform these tasks for the plaintiff.  *Id*. ¶ 98.  During a March 14, 2007, early morning planning meeting, Berube asked all of the RSRs whether any of them were in jeopardy of not completing their routes that day.  *Id*. ¶ 100.  The plaintiff indicated that he was at risk of not completing his route.  *Id*. ¶ 101.  According to the plaintiff, Berube then said "you know, I think you can do it."  *Id*. ¶ 102.  The plaintiff then turned to Bill Lundy and said "[D]o you think [that] I can do this [.] . . . Bill . . . you used to be the ROS, you know the area."  *Id*.  ¶ 103.  Berube and the plaintiff

---

[8] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 93, but the denial is not responsive to the factual assertions made in the paragraph, which are supported by the citation given and accordingly deemed admitted.

discussed this behavior, which Berube had taken as a deliberate attempt to undermine his authority in front of all the other RSRs, in Berube's office after the meeting.  *Id.* ¶¶ 105-06.[9]

According to the plaintiff, during an early planning meeting on April 11, 2007, Berube informed the RSRs that they were falling behind in the key performance indicators -- Nestlé Waters' performance and efficiency standards -- on their routes.  *Id.* ¶ 107.  According to the plaintiff, Berube then said that the Key Performance Indicators "needed to improve or else."  *Id.* ¶ 108.[10]  In response, and in front of everyone at the meeting, the plaintiff asked Berube, "[A]re you threatening us?"  *Id.* ¶¶ 109-10.  After the meeting, Berube told the plaintiff not to do anything like that again.  *Id.* ¶ 111.

On April 1, 2007, the defendant went to a 21-day route cycle for visiting customers' homes and offices.  *Id.* ¶ 112.  With this cycle, RSRs only visited their customers once every three weeks.  *Id.* ¶ 113.  Because of the cycle, if an RSR did not update his or her RoadNet directions[11] every single day, then for 21 days he or she would be behind.  *Id.* ¶ 114.  On or about April 6, 2007, Berube instructed the plaintiff to sit in the cab of his truck and correct the directions for his route. *Id.* ¶ 116.[12]  On or about April 9, 2007, the plaintiff told Berube that "it was going to take a while until [he] became familiar with the route" and thus before he could

---

[9] The plaintiff purports to deny paragraph 105 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶105, but none of the record material to which he cites concerns Berube's belief, which is the subject matter of the paragraph.  Because it is supported by the citation given, paragraph 105 is deemed admitted.

[10] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 108, but the substance of the paragraph is in fact what the plaintiff says in the cited portion of the transcript of his deposition.  Deposition of John Speckin (Docket No. 13) at 182.  Indeed, the plaintiff cites his "or else" testimony in his response to the very next paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶ 109.  The defendant has asked that the plaintiff's denial of paragraph 108 be stricken for these reasons, Defendant's Reply Statement at 23-24.  Paragraph 108 is deemed admitted.

[11] The defendant generally provides RSRs with RoadNet directions, stop sheets, and route cards that, collectively, provide directions to various points on a given route, parking tips for each stop, and instructions regarding placement of delivered products.  Defendant's SMF ¶ 95; Plaintiff's Responsive SMF ¶ 95.

[12] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 116, but his denial does not provide a citation to the summary judgment record, as required by Local Rule 56(c).  In addition, the document cited in support of this paragraph by the defendant fully supports it.  Paragraph 116 accordingly is deemed admitted.

update his route cards.  *Id*. ¶ 118.  As of April 11, 2007, the plaintiff had not completed all of the route cards for his assigned routes.  *Id*. ¶ 122.  During this time, another RSR would drive the plaintiff's truck while the plaintiff "rode shotgun."  *Id*. ¶ 119.

Berube issued the plaintiff a formal verbal counseling on April 30, 2007, the written record of which includes the warning that "[f]urther action will be taken [against you] up to and including termination if you continue to not follow instructions."  *Id*. ¶¶ 124, 126.[13]  Berube attempted to give the plaintiff a copy of the written form of the verbal counseling in the facility's parking lot on the morning of April 30, 2007.  *Id*. ¶ 127.[14]  When asked to sign the document, the plaintiff said that he would not do so because he felt that Berube was being disrespectful to him by raising the issue in a parking lot.  *Id*. ¶¶ 128, 131, 133.[15]  The plaintiff has acknowledged that refusal to follow a superior's direct order is insubordination.  *Id.* ¶136.[16]

Berube had reached a point where he was no longer willing to tolerate what he perceived as the plaintiff's disrespectful conduct.  *Id* ¶ 139.[17]  He believed that the plaintiff's pattern of

---

[13] The plaintiff purports to deny paragraph 126 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 126, but the denial – "The discipline was only a verbal counseling which is only the first step in the progressive discipline policy." – does not deny anything said in paragraph 126.  It is supported by the citation given to the summary judgment record and therefore is deemed admitted.

[14] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 127, but he actually only contends that "[t]his encounter was not a meeting."  It is unlikely that the defendant meant by use of the word "meeting" to describe a scheduled encounter, but, in any event, I do not use the term in my summary of the facts.

[15] The plaintiff purports to deny these paragraphs of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶¶ 128, 131, 133, but, when the substance of these "denials" is considered, it is clear that there is no dispute about the facts set forth in the text based on those paragraphs.

[16] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 136, but the denial does not address the substance of the paragraph, which is supported by the citation given and accordingly deemed admitted.

[17] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 139, but he merely denies that he actually engaged in any insubordinate conduct, and cites as support his entire separate statement of facts, some 22 pages and 182 paragraphs.  This is not an appropriate pinpoint citation.  Further, the plaintiff's denial does not address what was in Berube's mind at the relevant time, which is the subject matter of the paragraph.  The paragraph is deemed admitted.

behavior since late January 2007 was both insubordinate and disruptive. *Id.* ¶ 140.[18] The defendant offers the following as an example:

> At an early morning meeting at the facility on February 23, 2007, the defendant announced that it intended to increase the salary given to new RSRs and to cap the maximum salary that RSRs could receive. *Id.* ¶¶ 141-42. The plaintiff claims that he was not bothered by the new policy. *Id.* ¶ 143. Brian Bisson announced his discontent with the new pay structure during the meeting. *Id.* ¶ 144. The plaintiff commented that he believed that Bisson was underpaid. *Id.* ¶ 145.

On April 30, 2007, Berube contacted Brian Langley to discuss the plaintiff's behavior in the parking lot. *Id.* ¶ 148.[19] He told Langley that he was at his wits' end with the plaintiff. *Id.* ¶ 149.[20] Langley asked Berube about the steps he had taken to coach the plaintiff. *Id.* ¶ 151. Berube said that he had repeatedly tried to talk to the plaintiff and did not know what else to do. *Id.* ¶ 152.[21]

After completing his route on April 30, 2007, the plaintiff went to Berube's office. *Id.* ¶153. He and Berube contacted Langley to discuss the earlier events of the day. *Id.* ¶ 154. Langley told the plaintiff to go home and said that the company would call him in a few days. *Id.* ¶157. The plaintiff was subsequently terminated for six acts of insubordination. *Id.* ¶ 158.

On May 3, 2007,[22] the plaintiff was instructed to return to the Gray, Maine, facility to speak with Berube and David Smolski, the New England Zone Area Human Resources and

---

[18] *See* footnote 17, *supra*.

[19] The plaintiff purports to deny paragraph 148 of the defendant's statement of material facts, but he actually only objects to the characterization of the parking lot encounter as "an outburst" on his part. Plaintiff's Responsive SMF ¶ 148. I have not used that characterization in the text of this recommended decision. The plaintiff did not object to the remainder of the paragraph, which is therefore deemed admitted.

[20] The plaintiff purports to deny paragraph 149 of the defendant's statement of material facts, but the denial does not address the factual assertions of that paragraphs and improperly cites the plaintiff's entire statement of material facts as authority for the non-responsive denial. Plaintiff's Responsive SMF ¶ 149. Because the paragraph is supported by the citation to the record given by the defendant, it is deemed admitted.

[21] The plaintiff purports to deny paragraph 152 of the defendant's statement of material facts, but he merely denies that Berube spoke to him repeatedly about his attitude or performance. Plaintiff's Responsive SMF ¶ 152. His denial does not deny the substance of the paragraph, which is supported by the citation given and thus is deemed admitted.

[22] The defendant's statement of material facts reads 2008, but 2007 appears to be the correct year.

Employee Development Manager. *Id.* ¶ 159. When the plaintiff arrived, he was given a termination notice. *Id.* ¶ 160. According to the plaintiff, Smolski informed him that he was being terminated for the reasons set forth in the termination notice. *Id.* ¶ 161. The notice stated that the plaintiff had engaged in the following:

> **1-30-07**: Insubordinate comments made directly to [Mr. Berube]. **2-22-07**: Disruptive and disrespectful towards the EPM[.] **2-26-07**: Disrespectful comment made to new hire while he was doing his opening. **3-14-07**: Disruptive and disrespectful in EPM. **4-11-07**: Disrespectful, disruptive and insubordinate in EPM. [] **4-30-07**: Insubordinate and defiant in parking lot. Also insubordinate the same afternoon.

*Id.* ¶ 162.

The plaintiff first learned of the alleged January 30, 2007, incident when he saw the termination notice. Plaintiff's SMF ¶ 117; Defendant's Responsive SMF ¶ 117. The same is true of the alleged incident on February 26, 2007. *Id.* ¶¶ 120, 125.

The plaintiff contends that the termination notice was defamatory. Defendant's SMF ¶ 165; Plaintiff's Responsive SMF ¶ 165.[23] He does not contend that the defendant made any other defamatory statements about him. *Id.* ¶ 166. The plaintiff informed his ex-wife, sisters, and brother of his termination and the reasons given for it by the defendant. *Id.* ¶ 167. He has no evidence that anyone employed by or representing the defendant said anything to any of his co-workers about the reasons for his termination. *Id.* ¶ 169. He has no evidence indicating that Larry Gillis, Berube, Langley, or Smolski said anything to anyone else about the reasons for which he was terminated. *Id.* ¶ 170.

The plaintiff appealed his termination. *Id.* ¶ 171. Smolski and Gillis, neither of whom made the original decision to terminate the plaintiff, presided over his appeal on May 23, 2007.

---

[23] The plaintiff has not responded to any of the remaining paragraphs, numbered 165 through 186, of the defendant's statement of material facts. These paragraphs are accordingly deemed admitted to the extent that they are supported by the citations given by the defendant to the summary judgment record.

*Id*. ¶¶ 172-73.   They decided to uphold the plaintiff's termination.  *Id*. ¶ 174.  Shortly thereafter, the plaintiff asked Smolski about the defendant's policy on employment references.  *Id*. ¶ 175.  Smolski told the plaintiff that the defendant would not reveal the reason for the plaintiff's termination.  *Id*. 176.

The plaintiff applied for employment with at least five different companies after his termination.  *Id*. ¶ 177.  He did not disclose on any of these applications that he had been terminated by the defendant.  *Id*. ¶ 179.  There is nothing to indicate that the defendant ever told any of these companies the reason why the plaintiff's employment ended.  *Id*. ¶ 180.

The plaintiff cannot point to any damage to his reputation caused by the fact that the defendant terminated him for insubordination.  *Id*. ¶ 182.  The defendant did not respond to an inquiry from the Maine Unemployment Division regarding the details of the plaintiff's termination.  *Id*. ¶ 183.  The plaintiff was able to obtain unemployment compensation benefits until he found new employment on August 22, 2007.  *Id*. ¶ 184.

### III. Discussion

The complaint in this action alleges violation of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831-40 (Count I); slander *per se* (Count II); and defamation (Count III).  Complaint (Attachment 1 to Notice of Removal (Docket No. 1)) at 4-5.  The defendant seeks summary judgment on all three counts.  Nestlé Waters North America Inc.'s Motion for Summary Judgment ("Motion") (Docket No. 11) at 1.  The plaintiff opposes the motion with respect to Count I, but is silent with respect to Counts II and III.  Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 18) at 3-20.

### A.  Counts II and III

When a plaintiff fails to respond to a motion for summary judgment on a particular claim, the court must nonetheless consider the merits of the motion as to that claim before entering summary judgment.  *Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 41-42 (1st Cir. 2004).

Defamation includes a false and defamatory statement, that is, one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996). In addition, the elements of the claim are an unprivileged publication of the statement to a third party, fault amounting at least to negligence on the part of the publisher, and either the existence of special harm caused by publication or a statement that amounts to slander *per se*.  *Id*. at 86. Falsity and unprivileged publication are essential elements of all defamation claims, including those for slander *per se*.  *Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1993).

Here, the facts presented in the plaintiff's statement of material facts cannot be read to allow a reasonable factfinder to conclude that the termination notice, the only instance of slander or defamation apparently alleged in the complaint, Complaint ¶¶ 34-41, or mentioned in his statement of material facts, Plaintiff's SMF ¶¶ 172-73, was published to a third party, or to any party other than the plaintiff himself.  Indeed, he did not dispute the defendant's assertions that it never told any of the potential employers to whom he applied after his termination or the state unemployment benefits agency, when asked, why the plaintiff had been terminated.  Defendant's SMF ¶¶ 179-80, 183.

Without evidence of unprivileged publication to a third party, Counts II and III must fail. The defendant is entitled to summary judgment on those counts.

## B.  Count I

Count I alleges that the defendant illegally retaliated against the plaintiff under the Maine Whistleblowers' Protection Act (the "Act").   Complaint ¶¶ 28-32.   That statute provides, in pertinent part:

> No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, locations or privileges of employment because:
> **A**.  The employee, acting in good faith, . . . reports orally or in writing to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State . . . or the United States[.]

26 M.R.S.A. § 833(1).  In order to establish a *prima facie* case of unlawful retaliation under this statute, a plaintiff must demonstrate (1) that he engaged in activity protected by the Act, (2) that he experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action.  *Blake v. State*, 2005 ME 32, ¶ 5, 868 A.2d 234, 237.  Here, the defendant contends that the plaintiff cannot establish the first and third elements of this test.  Motion at 14.

### 1.  Protected Activity

The plaintiff identifies the following as the protected activity on which he relies with respect to the first element:

> [(1)] O]n January 8, 2007, Speckin reported to Berube of his communication with the Attorney General and understanding that assuming the sale and pre-qualifying was illegal[;] . . . [(2)] on January 30, 2007, Speckin again reported to Berube that the practice was illegal[;] . . . [(3) o]n February 7, 2007, Speckin met with Zone Manager Brian Langley, reported his communication with [the] Maine Attorney General's office and the conclusion that the subject practice was illegal[;] . . . [(4)] Speckin subsequently met with Langley's boss, Larry Gillis, and reported to Gillis the practice was illegal[;] . . . [(5)] on March 27, 2007, Speckin filled out a Nestlé's Ethic[]s Questionnaire and identified the assuming the sale practice as an illegal practice.

16

Opposition at 5.

The defendant responds that three of these incidents, specifically the first, second, and fourth, could not be the kind of report contemplated by the Act, but rather were "'point[s] of information' or passing statement[s]." Reply Brief in Support of Nestlé Waters North America Inc.'s Motion for Summary Judgment ("Reply") (Docket No. 24) at 2. It cites no authority in support of its assertion that an act that is properly characterized as a "point of information" or a "passing statement" cannot, as a matter of law, constitute protected activity under the Act. It does contend that, at the time that the plaintiff made these statements, "he was not dumping product, did not know of any other employee who was dumping product, and had been told the practice was contrary to Company policy[,]" so the plaintiff could not have reasonably believed at the time that the defendant was engaging in illegal activity. *Id*. The Act requires that the individual seeking to recover under its terms prove that a reasonable person might have believed that the employer was acting unlawfully. *Bard v. Bath Iron Works Corp*., 590 A.2d 152, 155 (Me. 1991).

The page of the plaintiff's deposition cited by the defendant for the proposition that the plaintiff "did not know of any other employee who was dumping product," Reply at 2, Defendant's SMF ¶ 91, Deposition of John Speckin (Docket No. 13) at 163, does not establish that the plaintiff did not know of dumping by other employees, only that the plaintiff "can't speak for other drivers." *Id*. at 162. Moreover, each of the record citations given by the plaintiff in support of the three incidents in question can, in fact, reasonably be read as recording a "report" by the plaintiff to one of his superiors within the defendant's employment hierarchy of what he reasonably believed to be illegal activity that the company was directing its drivers to undertake. Opposition at 5; Plaintiff's SMF ¶¶ 36, 38, 48. Admittedly, there is, as the defendant

17

indicates, Reply at 2, evidence in the summary judgment record that the defendant's policy was that its drivers were not to "dump" product, Defendant's SMF ¶ 93, but that is not necessarily inconsistent with the plaintiff's testimony that RSRs were instructed by their immediate supervisors to undertake this practice nonetheless.

### 2. *Causal Connection*

The defendant next contends that the plaintiff has failed to demonstrate the existence of a causal connection between any of the five reports and his termination, because too much time passed between the reports and the termination, Motion at 16-17, and, with respect to the last of the five reports listed by the plaintiff, there is "undisputed evidence" that Berube was not notified of the plaintiff's response to the Ethics Questionnaire, Reply at 2. The "undisputed evidence" to which the defendant refers is the defendant's response to paragraph 55 of the plaintiff's statement of material facts. Reply at 2. Because the plaintiff had no opportunity under Local Rule 56 to reply to the defendant's response to one of the paragraphs of his statement of material facts (other than to lodge an objection), the defendant cannot rely on its response to establish an "undisputed" fact. However, it is accurate to say that the plaintiff has offered no evidence that anyone involved in any way in the decision to terminate his employment ever saw his response to the ethics questionnaire. Accordingly, he has not established the necessary causal connection to rely on his fifth "report."

The remaining four reports on which the plaintiff relies took place on January 8, 2007, January 30, 2007, February 7, 2007, and sometime in February 2007. Opposition at 5; Plaintiff's SMF ¶ 48. His employment was terminated on May 3, 2007. Defendant's SMF ¶¶ 159-60.[24] The defendant argues that "[t]hree months is not sufficiently close to establish a causal

_____

[24] Again, the date is given in Defendant's SMF ¶ 159 as May 3, 2008, which the court assumes is a typographical error.

18

connection based *solely* on temporal proximity," citing *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004). Motion at 17 (emphasis in original). The plaintiff's response makes clear that he does rely merely on temporal proximity to make his case for the existence of a causal connection between the reports and his termination. Opposition at 6.[25]

In some cases, temporal proximity alone is enough to "meet the relatively light burden of establishing a prima facie case of retaliation." *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) (suggesting that events within one year may be sufficient). Observing that three- and four-month periods have been held insufficient, the First Circuit upheld as sufficient temporal proximity a period of one month. *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 25-26 (1st Cir. 2004). Other courts have held that longer periods are sufficient to establish temporal proximity. *E.g., Espinal v. Goord*, __ F.3d __, 2009 WL 224496 (2d Cir. Feb. 2, 2009), at *9 (six months); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (three months). I am unwilling, given the light burden to be carried by a plaintiff at this point and the First Circuit's most recent pronouncement in *DeCaire*, to recommend that the court hold as a matter of law that a lapse of between two and three months, depending on the exact date that the plaintiff met with Gillis, between the plaintiff's last protected activity and the adverse employment action is insufficient, standing alone, to establish the requisite causal connection.[26]

---

[25] The plaintiff also asserts that, on January 30, 2007, "Berube began to secretly make false reports of allegedly insubordinate activity by Speckin, who in his eighteen years of employment with Defendant[] had never been disciplined for improper conduct. Berube subsequently continued to keep his secret file on Speckin until he felt he had sufficient, albeit false, information to terminate Speckin for insubordination." Opposition at 6 (citations omitted). To the extent that the plaintiff means to contend that the alleged secret and false reports by Berube are themselves an adverse employment action, *id.*, that argument fails. "Typically, the employer must either (1) take something of consequence from the employee . . . or (2) withhold from the employee an accouterment of the employment relationship[.]" *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996)(citations omitted). Keeping a secret file on an employee is neither. Assuming *arguendo* that Berube engaged in the alleged activity, it is irrelevant to the question of whether a causal connection can be established by temporal proximity in this case.

[26] The defendant contends that "the larger picture undercuts any claim of causation" based on temporal proximity because the plaintiff at the relevant time "was already under a written performance warning that threatened termination if sufficient progress was not made by January 2007." Reply at 3. However, that warning, as described

### 3.  Pretext

The defendant next argues, in the alternative, that even if the plaintiff has established a *prima facie* case under the Act, the defendant has articulated a legitimate non-retaliatory reason for the termination that would permit a factfinder to conclude that retaliation was not the cause of the termination.[27]   Motion at 17.[28]    The defendant's burden at this point in the summary judgment analysis is a light one; it "need only produce an explanation, and thus need not persuade the court that it was actually motivated by the proffered reasons."  *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co*., 152 F.3d 17, 24 (1st Cir. 1998) (citation and internal quotation marks omitted).

Here, the defendant has proffered the legitimate, non-retaliatory reason that the plaintiff's employment was terminated for various acts of insubordination.  Motion at 17; Defendant's SMF ¶ 162; Plaintiff's Responsive SMF ¶ 162.  The plaintiff concedes that the defendant has carried this burden.  Opposition at 6.  The plaintiff must, as a result, "elucidate specific facts which would enable a jury to find the reason given is not only a sham, but a sham intended to cover up the employer's real motive" of retaliation.  *Mesnick v. General Elec. Co*, 950 F.2d 816, 824 (1st Cir. 1991) (citation and internal quotation marks omitted).  Mere speculation will not suffice. *Mariani-Colón v. Department of Homeland Sec.*, 511 F.3d 216, 221 (1st Cir. 2007).

The defendant asserts that its "primary impetus for Plaintiff's termination was his refusal, despite direct instructions from Mr. Berube, to update and turn in his route cards on a daily basis and Plaintiff's subsequent refusal, again despite Mr. Berube's direct orders, to sign and

---

in the paragraphs of its statement of material facts cited by the defendant, was for insufficient sales, Defendant's SMF ¶¶ 58-59, not for insubordination, which was the reason given five months later for the plaintiff's termination.
[27] Contrary to the plaintiff's assertion, Opposition at 6, the fact that the defendant makes this argument in the alternative in no way suggests that it "concedes [that] Plaintiff can establish the prima facie case[.]"
[28] This approach to the analysis of a claim under the Maine Whistleblowers' Protection Act, based on federal Title VII case law, has been adopted by the First Circuit.  *Wytrwal v. Saco Sch. Bd.*, 70 F.3d 165, 172 (1st Cir. 1995).

acknowledge receipt of the April counseling documenting his earlier act of defiance[,]" citing Defendant's SMF ¶¶ 129-33, 137-39.  Motion at 17-18.  The problem for the defendant here is that the plaintiff denies paragraphs 129-30 and 132 of the defendant's statement of material facts, without objection from the defendant.  These paragraphs are essential to the defendant's argument and, therefore, the fact that they are disputed by the plaintiff means that the defendant is not entitled to summary judgment on this basis.

The defendant goes on to contend that the plaintiff "admits that all but one of the occurrences recounted in his notice of termination happened[,]" citing paragraphs 65-68, 100-03, 107-09, 118, 123, and 129-33 of its statement of material facts.  Motion at 19.  To the contrary, the plaintiff denies most of these paragraphs.  Plaintiff's Responsive SMF ¶¶ 65, 67-68, 108, 123, 129-33.  Those paragraphs that are admitted or qualified by the plaintiff establish only that (1) the plaintiff questioned Berube about what action the defendant intended to take since the plaintiff had not met his sales goals, Defendant's SMF ¶ 66, Plaintiff's Responsive SMF ¶ 66;[29] (2) during a morning meeting on March 14, 2007, Berube asked all RSRs whether any of them was in danger of not completing his route that day, the plaintiff responded affirmatively, Berube said, "you know, I think you can do it," and the plaintiff turned to Bill Lundy and said, "do you think [that] I can do this[.] . . . Bill . . . you used to be the ROS, you know the area," Defendant's SMF ¶¶ 100-03, Plaintiff's Responsive SMF ¶¶ 100-03; (3) during a meeting on April 11, 2007, Berube informed the RSRs that they were falling behind in the key performance indicators – Nestlé Waters' performance and efficiency standards – on their routes, after which the plaintiff asked Berube in front of everyone at the meeting, "[A]re you threatening" anyone on the crew

---

[29] The plaintiff purports to qualify his response to paragraph 66 of the defendant's statement of material facts, but the qualification includes no citation to the summary judgment record, and the paragraph is therefore deemed admitted to the extent that it is supported by the citation properly made in the defendant's statement of material facts.

with termination? Defendant's SMF ¶¶ 107, 109-10, Plaintiff's Responsive SMF ¶¶ 107, 109-10; and (4) on or about April 9, 2007, the plaintiff told Berube that "it was going to take a while until [he] became familiar with the route" before he could update his route cards.  Defendant's SMF ¶ 118, Plaintiff's Responsive SMF ¶ 118.

The first and fourth incidents, to the extent set forth above, do not necessarily constitute insubordination.  The other two, instances of questioning a supervisor in front of others, may demonstrate insubordination, but do not, as a matter of law, eliminate the possibility of pretext. My conclusion in this regard would not change if the plaintiff's denials of paragraphs 65, 68, and 108, which are challenged by the defendant, Defendant's Reply Statement, Objections ¶¶ 65, 68, 108, were disregarded, and I overruled the defendant's stated objections to the plaintiff's denials of paragraphs 123 and 131, and 133.  *Id.* ¶¶ 123, 131, and 133.

To be sure, the fact that the proffered evidence of insubordination is largely disputed does not mean that the proffered evidence is necessarily pretextual.  Beyond his denials, the plaintiff's proffered evidence of pretext for the first instance of insubordination claimed by the defendant is that the event alleged to have taken place on January 30, 2007, actually took place in early November 2006 but was not mentioned in his annual evaluation on February 22, 2007, and (1) was contradicted by Berube's deposition testimony that he did not have any work issues with the plaintiff in 2006, (2) did not result in application of the defendant's progressive discipline policy, and (3) is not documented in Berube's personal notebook, from which the page "referring [to] the January 30, 2007 incident [has] been torn out . . . indicating it had been prepared at a later date."  Opposition at 10.

The conclusion that a page of a notebook has been "prepared at a later date" does not follow from the premise that the page for the relevant date has been torn out.  In addition, as the

defendant asserts, Reply at 5, its progressive discipline policy explicitly allows for termination before all of the listed steps have been exhausted under certain circumstances, including gross insubordination.   Defendant's SMF ¶¶ 12-13, Plaintiff's Responsive SMF ¶¶ 12-13.   The plaintiff's first two asserted indicia of pretext could be fully explained if the event actually did take place on January 30, 2007, because such an event would not be mentioned in an annual evaluation of performance in 2006, and Berube's testimony that he did not have any work issues with the plaintiff would stand uncontradicted.   However, all that being said, at the summary judgment stage of a case, disputed evidence must be interpreted in the plaintiff-nonmovant's favor and not as the defendant-movant would have it cast.

The plaintiff offers similar evidence of pretext for the other incidents on which the defendant relies.   Opposition at 11-19.   Some of that evidence, such as the assertion that "given that this was Speckin's third alleged insubordinate or disrespectful act, surely Berube would have met with Speckin to develop a performance plan and to document the discipline taken[,]" *id*. at 12 (and repeated at 14), is mere speculation and not evidence of pretext. However, as with the plaintiff's proffered evidence of pretext for the first January 30, 2007, alleged instance of insubordination just discussed, I conclude that, while thin, some of the evidence cited by the plaintiff -- primarily his own testimony disputing the defendant's alleged facts -- would allow a reasonable factfinder to conclude that the defendant's proffered legitimate, non-retaliatory reasons for the plaintiff's termination were pretextual.   Under the standards governing evaluation of motions for summary judgment, I must recommend that the defendant's motion for summary judgment on Count I be denied.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Counts II and III of the complaint and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of February, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

24